UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID THOMAS BIALO,

               Plaintiff,             Case No. 2:20-cv-10671
                                         District Judge Nancy G. Edmunds
v.                                 Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S
AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 28),
STRIKE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 31), GRANT DEFENDANT'S AMENDED MOTION FOR SUMMARY
JUDGMENT (ECF No. 32), and AFFIRM THE COMMISSIONER'S
DECISION</u>**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's amended motion for

summary judgment (ECF No. 28), **STRIKE** Defendant's motion for summary

judgment (ECF No. 31), **GRANT** Defendant's amended motion for summary

judgment (ECF No. 32), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, David Thomas Bialo, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his applications for disability insurance (DI) and supplemental security income (SSI) benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's amended motion for summary judgment (ECF No. 28), the Commissioner's cross-motions for summary judgment (ECF Nos. 31, 32),[1] and the administrative record (ECF No. 21).

### A.    Background and Administrative History

Plaintiff filed the DI and SSI applications at issue in this appeal in April and May 2014, alleging that his disability began on January 15, 2009, at the age of 35. (ECF No. 21-5, PageID.225-241.)  In his disability report, he alleged that certain conditions (ulcerative colitis, high blood pressure, back problems, misaligned spine, asthma, diabetes, depression/dipolar disorder, and frequent bathroom trips) limit his ability to work.  (ECF No. 21-6, PageID.276.)  On August 1, 2014, the Social Security Administration (SSA) found that Plaintiff was not disabled.  (ECF No. 21-3, ECF No. 21-4, PageID.151-169.)

---

[1] The latter was filed with an amended memorandum of law, solely to correct administrative record citations in conformity with the Court's updated rules on the subject, namely to cite to page identifiers within CM/ECF record numbers; therefore, all citations in this report are to ECF No. 32.  Plaintiff made the same mistake but did not correct it.  As for Plaintiff's citations to transcript page numbers (rather than CM/ECF page identifiers), his attorney's attention is drawn to the Court's *Electronic Filing Policies and Procedures* for future reference, Rule 6 of which addresses "Referencing the Court Record."

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").
(ECF No. 21-4, PageID.170-171.)  On January 15, 2016, ALJ John Dodson held a
hearing, at which Plaintiff and a vocational expert (VE), Helen Topcik, testified.
(ECF No. 21-2, PageID.91-127.)  On March 24, 2016, ALJ Dodson issued an
opinion, which determined that Plaintiff was not disabled within the meaning of
the Social Security Act.  (*Id.*, PageID.69-90.)

Plaintiff submitted a request for review of the hearing decision.  (ECF No.
21-4, PageID.213-216.)  However, on May 22, 2017, the Appeals Council denied
Plaintiff's request for review.  (ECF No. 21-2, PageID.62-66.)  Thus, ALJ
Dodson's decision became the Commissioner's final decision.  Plaintiff filed an
appeal, which resulted in an order remanding the case pursuant to sentence four
of 42 U.S.C. § 405(g).  *Bialo v. Comm'r of Soc. Sec.*, No. 17-12384, 2019 WL
1349609, at *2 (E.D. Mich. Mar. 26, 2019).

On October 30, 2019, on remand, ALJ Dodson conducted a hearing, at
which Plaintiff and a VE, Larissa Boase, testified.  (ECF No. 21-8, PageID.474-
533.)  On December 13, 2019, ALJ Dodson issued a new opinion, which also
determined that Plaintiff was not disabled within the meaning of the Social
Security Act.  (ECF No. 21-8, PageID.451-473.)  It does not appear that Plaintiff
requested review of this decision or that the Appeals Council reviewed the decision

on its own.  Therefore, ALJ Dodson's decision became final on or about February 12, 2020.  Plaintiff timely filed the instant appeal on March 12, 2020.

## B.    Plaintiff's Medical History

The administrative record contains approximately 356 pages of medical records, which were available to the ALJ at the time of the December 13, 2019 decision.  (ECF No. 21-7, PageID.308-449 [Exhibits 1F-7F], ECF No. 21-13, PageID.734-947 [Exhibits 8F-16F]; *see also* ECF No. 21-8, PageID.472-473.) These materials will be discussed in detail, as necessary, below.[2]

## C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2009, the alleged onset date (AOD).

_____

[2] It appears that the sixteen exhibits of medical records span the period from November 1, 2008 through October 29, 2019.  (ECF No. 21-1, PageID.58-60.) Thus, much of the record evidence post-dates the June 30, 2013 date last insured (DLI).  The Court assumes this evidence was not excluded, because Plaintiff had filed both an application for DI benefits and an application for SSI benefits.  *See Spaulding v. Comm'r of Soc. Sec.*, 310 F. App'x 826, 827 (6th Cir. 2009) ("Because Spaulding's electronically generated earnings record indicated that his DLI for disability insurance purposes was June 30, 1991 (over four months earlier), his application was granted for SSI but denied for disability insurance."); *Henry v. Comm'r of Soc. Sec.*, 678 F. App'x 392, 393 (6th Cir. 2017) ("The ALJ determined that Henry was disabled and eligible for supplemental-security-income benefits as of July 3, 2013, but that she was not eligible for disability-insurance benefits because she became disabled after December 31, 2012, her date last insured.").

(ECF No. 21-8, PageID.457.)  At **Step 2**, the ALJ found that Plaintiff had several

severe impairments (lumbar spondylosis, asthma, chronic obstructive pulmonary

disease (COPD), diabetes mellitus, obesity, colitis, anxiety, and depression).  (*Id.*,

PageID.457.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id.*, PageID.457-459.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[3] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*] . . . except he
> should not climb ropes, ladders, or scaffolds; could occasionally climb
> ramps and stairs, balance, stoop, kneel, crouch, and crawl [*postural
> limitations*]; should have no concentrated exposure to vibrations,
> hazards, shifting or uneven terrain, extreme temperatures, or
> pulmonary irritants [*environmental limitations*]; could do unskilled
> work, involving simple, routine, repetitive tasks [*understanding,
> remembering, or applying information* and/or *concentrating,
> persisting, or maintaining pace limitations*]; no work with the public,
> and occasional interaction with coworker and supervisors [*interacting
> with others limitations*].

(*Id.*, PageID.460-466.)  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.*, PageID.466.)  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ found that there

---

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*, PageID.466-467.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 15, 2009, through the date of the decision.  (*Id.*, PageID.467.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that the ALJ erred:  (1) by declining to find Plaintiff's additional medical conditions to be severe impairments; (2) in assessing Plaintiff's residual functional capacity; and, (3) in finding Plaintiff capable of performing substantial gainful activity.  (ECF No. 28, PageID.1035-1052.)  Plaintiff has the

burden of proof on each of these statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### 1.    Step 2

Plaintiff's argument that the ALJ erred at Step 2 is based on the failure to recognize "groin pain" as severe and the failure to mention "ongoing acute upper respiratory infections, gastrointestinal problems involving significant diarrhea, diverticulitis of the intestine, irritable bowel syndrome [(IBS)], and gastroesophageal reflux disease."  (ECF No. 28, PageID.1035-1036.)  At Step 2, in addition to finding that several of Plaintiff's impairments were severe, ALJ Dodson found that Plaintiff's hypertension, groin pain, and rheumatoid arthritis (RA) were "non-severe."  (ECF No. 21-8, PageID.457.)  As to groin pain, ALJ Dodson explained:

> The claimant underwent a computerized tomography (CT) scan to determine the source of his groin pain in June 2010.  ([ECF No. 21-7, PageID.349]).  The CT scan showed bilateral small renal calculi asymptomatic, and it was determined that the groin pain's etiology was unknown.  ([*Id.*]).  More recently, the claimant has been diagnosed with an embolism in the lower extremity, near the groin. ([ECF No. 21-13, PageID.893-943]).  However, this is only treated with medication and while the claimant testified he has been advised to elevate his legs, there is no record of any such medical recommendation.  There is also no clinical evidence of any swelling in the lower extremities.

(*Id.*)

As to the "groin pain" impairment, Plaintiff cites records dated October 2018 and April 2019 regarding his acute embolism and deep vein thrombosis (ECF No. 21-13, PageID.909, 912-913, 916) and the October 2019 testimony regarding sitting up with his foot elevated due to the "blood clot" in his leg or the embolism putting pressure on his knee (ECF No. 21-8, PageID.495, 513-514).  (ECF No. 28, PageID.1036-1037.)  Then, as to the allegedly "lengthy history" of "upper respiratory infections, gastrointestinal problems involving diarrhea / diverticulitis / [IBS] and gastroesophageal reflux disease (GERD),"  Plaintiff provides two string citations to the administrative record, albeit one much lengthier than the other. (ECF No. 28, PageID.1036-1038.)

One simple point needs to be made here – any error at Step 2 as to these impairments is harmless.  ALJ Dodson found that Plaintiff had several severe impairments.  "This caused the ALJ to consider [Plaintiff]'s severe and nonsevere impairments in the remaining steps of the sequential analysis.  The fact that some of [Plaintiff]'s impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  *See also Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that

claimant's cervical condition constituted a severe impairment could not constitute reversible error.").

### 2.    RFC

Plaintiff's RFC argument is multi-faceted.  (ECF No. 28, PageID.1038-1050.)  The Court will address these arguments as either related to physical or mental impairments.

### a.    Physical impairments

First, Plaintiff claims that the RFC does not account for "an ongoing blood clot from his embolism; his ongoing chronic issues with upper respiratory infections; and his need to have a bathroom nearby due to, at times, 'explosive diarrhea' and unpredictable urgency due to diverticulosis of the intestine and [IBS]."  (*Id*., PageID.1039.)  This statement, which is unaccompanied by record citations, does not, by itself, satisfy Plaintiff's "burden of proving [his] lack of residual functional capacity."  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citation omitted).  "[I]t is not for the court to search the record and construct [or support] arguments.  Parties must do that for themselves."  *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (citation omitted).

Second, Plaintiff claims that the ALJ did not include the restrictions assessed by his long-term physician, Marshall Sack, D.O. / Family Care Physicians, essentially claiming that the ALJ improperly rejected his opinion.  (ECF No. 28,

PageID.1039-1043.)  The medical evidence of record from Dr. Sack / Family Care

Physicians spans the period from October 7, 2014 to August 8, 2019.  (Ex. Nos.

4F, 5F, 13F, 15F.)  The ALJ acknowledged that Plaintiff "treated with provider

Marshall Sack, DO, from January 2016 to August 2019[,]" (*id*., PageID.463),

although – as just stated – Dr. Sack treated Plaintiff as early as October 7, 2014

(ECF No. 21-7, PageID.389-391).  In any event, ALJ Dodson clearly appreciated

the fact that it was a treatment relationship of substantial duration and noted that he

"considered opinion evidence in accordance with the requirements of 20 CFR

404.1527 and 416.927."  (ECF No. 21-8, PageID.460.)  ALJ Dodson gave Dr.

Sack's September 19, 2016 physical MSS (ECF No. 21-13, PageID.777-785 [Ex.

12F]) "little weight," as:

> . . . it is grossly inconsistent with Dr. Sack's own treatment notes and
> clinical exams, which noted largely normal findings and that the
> claimant was overall doing well, with only occasional bronchitis
> flares or abdominal flares.  The claimant's musculoskeletal exams
> were routinely normal, aside from few recent occasions with lower
> extremity swelling and tenderness.  The claimant has also not had
> any aggressive treatment for any condition to suggest this level of
> limitation.  Aside from medications, the claimant has not had any
> surgeries or physical therapy.  Overall, the claimant's level of
> treatment and findings are not proportional to this level of limitation.

(ECF No. 21-8, PageID.464.)  Thus, it is clear that the ALJ considered the

examining relationship, treatment relationship, supportability and/or consistency

factors when discounting this opinion.  20 C.F.R. §§ 404.1527(c)(1)-(4).

**(i)** Plaintiff complains that the ALJ did not recognize Dr. Sack as having been Plaintiff's psychiatrist. (ECF No. 28, PageID.1040.) True, the ALJ referred to Dr. Sack as Plaintiff's "primary care provider" and stated, "there was no evidence of ongoing mental health treatment with a therapist or a psychiatrist[,]" (ECF No. 21-8, PageID.461-463.) (*Id.*) Yet, Plaintiff has pointed to one entry out of years of records, found in Dr. Sack's October 7, 2014 notes, wherein the psychiatric evaluation reflects depressed mood and blunted affect and the diagnoses include affective disorder and anxiety disorder (ECF No. 389-390). (ECF No. 28, PageID.1040-1041.) While Dr. Sack is listed in the American Medical Association's "DoctorFinder" as having received residency training in psychiatry and as having a secondary specialty of psychiatry, it also lists family medicine as his primary specialty (self-designated).[4] Moreover, his office or business is "Family Care Physicians." (*see*, *e.g.*, ECF No. 21-13, PageID.784), (ECF No. 21-13, PageID.784.) And the two pages of Dr. Sack's records to which Plaintiff points reflect a "[n]ew patient coming in today for Psychiatric Eval[uation][,]" and instructions "to take medications as prescribed[,]" , but the Zoloft and trazodone prescriptions are listed as "discontinued." (ECF No. 21-7,

---

[4] *See* https://doctorfinder.ama-assn.org/doctorfinder/member.do?id=1629734880758&index=0&page=1 (last visited Aug. 23, 2021).

pageID.389, 391.)  <u>Importantly, Dr. Sack completed a *physical* MSS, not a *mental*</u>
<u>MSS</u>.  (ECF No. 21-13, PageID.777.)

    **(ii)**    Plaintiff also challenges the ALJ's characterization of Dr. Sack's
treatment records as noting "largely normal findings."  (ECF No. 28, PageID.1041-
1042.)  Plaintiff relies on a "Chart of Medical Entries" (ECF No. 28-2) – which is
more than 12 pages in length – to support this argument, *i.e.*, "to provide citation
content," (ECF No. 28-1); yet, his statement – "the volume of office visits for
various and numerous conditions, in addition to the objective medical evidence
(MRI's) relative to David's lumbar spine condition, and the embolism he suffered
in 2018, from which he has residual problems[,]" (ECF No. 28, PageID.1041-
1042) – does not show error in the ALJ's characterization.

    **(iii)**    Finally, Plaintiff likens his case to one in which "the ALJ completely
omitted mention of [the treating physician's] … opinion that [claimant] could not
return to part-time work … and made minimal mention of [the treating physician]'s
other notations indicating that [claimant] could not work full-time."  *Fisher v.
Colvin*, No. CV 14-13516, 2015 WL 7251308, at *4 (E.D. Mich. Oct. 30,
2015), *report and recommendation adopted sub nom. Fisher v. Comm'r of Soc.
Sec.*, No. 14-CV-13516, 2015 WL 7717164 (E.D. Mich. Nov. 30, 2015).  (ECF
No. 28, PageID.1042-1043.)  But this argument ignores the fact that the ALJ here
made express citations to Dr. Mack's MSS.  (ECF No. 21-8, PageID.464.)

Third, Plaintiff takes issue with the ALJ's consideration of Plaintiff's

obesity.  (ECF No. 28, PageID.1048-1050.)  At Step 2, the ALJ determined that

obesity was among Plaintiff's severe impairments; at Step 3, the ALJ noted:

> The claimant's obesity is considered, however, the claimant's weight
> does not, either alone or in combination with other impairments, rise
> to the level of severity necessary to meet or equal a listing and the
> effects of the claimant's obesity were considered in assessing the
> claimant's residual functional capacity pursuant to Social Security
> Ruling 19-2p.

(ECF No. 21-8, PageID.457, 458.)  Then, within the RFC discussion, after noting

Plaintiff's height, weight and BMI, the ALJ explained:  "Pursuant to Social

Security Ruling 19-2p, the undersigned has considered obesity as an aggravating

factor to the claimant's other severe impairments and can cause or contribute to

impairments in the musculoskeletal body systems."  (Id., PageID.464.)

Plaintiff contends that the ALJ did not provide any rationale; thus, "we do

not know how the ALJ evaluated [P]laintiff's impairments relative to his

obesity[.]"  (Id., PageID.1049.)  Yet, as the Commissioner notes, Plaintiff has not

shown that he "requires a more restrictive RFC, as is his burden."  (ECF No. 32,

PageID.1133.)  See Jordan, 548 F.3d at 423.  See also Essary v. Comm'r of Soc.

Sec., 114 F. App'x 662, 667 (6th Cir. 2004) ("The absence of further elaboration on

the issue of obesity likely stems from the fact that Essary failed to present evidence

of any functional limitations resulting specifically from her obesity.").

In the end, as to Plaintiff's physical health impairments, the ALJ summarized: "the undersigned finds that the claimant's musculoskeletal problems and symptoms related to his obesity and diabetes warrant a light exertional level, as well as some postural and environmental limitations; the claimant's asthma, COPD and related respiratory symptoms warrant environmental limitations[.]" (ECF No. 21-8, PageID.466.)  Exertional, postural, and environmental limitations were provided for in the RFC.  (ECF No. 21-8, PageID.460.)

### b.    Mental impairments

#### i.    Elaine Tripi, Ph.D. and Franklin Sollars, Ph.D. – examining psychologists

First, Plaintiff argues that the ALJ did not include the restrictions noted by examining psychologist Elaine Tripi, Ph.D. or examining psychologist Franklin Sollars, Ph.D., essentially claiming that the ALJ improperly rejected these opinions.  (ECF No. 28, PageID.1039.)  The ALJ took note of Dr. Tripi's January 14, 2016 opinion (ECF No. 21-7, PageID.443-448; ECF No. 21-13, PageID.747-753) at Step 3 and again within the RFC determination.  (ECF No. 21-8, PageID.459, 463.)  In assigning the opinion weight, ALJ Dodson stated:

> The assessment as to the claimant's ability to sustain work activities is reserved to the commissioner and given *no weight*.  GAF scores have no direct correlation to the severity requirements of the mental disorder listings, and although GAF scores can be helpful in an ALJ's decision-making process, they are considered a snapshot of functioning at the time of the examination and not determinative of

overall disability.[5]  In this instance, the claimant's overall
conservative mental health treatment, lack of specialized mental
health treatment, and the lack of a supportive mental status
examination does not suggest serious symptoms.  Similarly, these
factors also do not support the assessment of marked or extreme
limitation in any area of function.  Accordingly, this assessment is
given *little weight*.

(*Id*., PageID.463 (emphasis added).)  The ALJ also took notice of the October 2019

opinion of Dr. Sollars and Kristine Vichinsky, M.A., T.L.L.P. (ECF No. 21-13,

PageID.758-763, 944-947), and, when assigning it "little weight," explained:

This assessment is based on a one-time interview.  The assessment
largely restates all of the claimant's subjective complaints and
endorsed behaviors rather than relying on objective clinical findings.
Even the noted Beck's Inventory measures are based on endorsed
symptoms rather than mental status examination findings or treatment
history.  Secondly, the examiners note that the claimant's problems
have existed since childhood, yet the claimant has been able to
maintain work activities, without any such disabling limitations, until
his back was injured.  This does not suggest his mental limitations
affect him to the level assessed by these examiners.  Finally, the
claimant has had minimal mental health treatment, he reported to Dr.
Sack on several occasions he was okay, good, and stable with
medications, and his mental status examinations were consistently
normal.  He has never reported hallucinations or delusions and has
never been hospitalized or received any sort of specialized treatment
relating to any of this mental health complaints.  He has never ha[d]
psychotherapy.  Despite this, the claimant has continued to be capable
of caring for his father, even managing his care after his father was
moved to a nursing home, per the claimant's testimony.  The claimant
testified to frequent calls with his father's care providers, suggesting
an ability to communicate effectively with others.  Overall, there is no

---

[5] "[A]ccording to the DSM's explanation of the GAF scale, a score may have little
or no bearing on the subject's social and occupational functioning." *Kornecky v.
Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).

evidence aside from the claimant's subjective complaints to support
this assessment.

(*Id*., PageID.464-465.)

As to Plaintiff's mental impairments – major depressive disorder (recurrent,

severe), generalized anxiety disorder, and bipolar disorder – Plaintiff notes that

Drs. Tripi and Sollars opined that Plaintiff had various marked/extreme limitations

and also that Dr. Sollars opined that Plaintiff's "limitations/descriptions of

symptoms existed since at least January 2009[,]" (ECF No. 21-13,

PageID.947)(ECF No. 28, PageID.1043-1044.)  Yet, Plaintiff then transitions to

"two main reasons why the ALJ did not accept the above mental RFC opinions."

(*Id*., PageID.1044.)  To the extent Plaintiff takes issue with the ALJ's statement

that there is "there was no evidence of ongoing mental health treatment with a

therapist or a psychiatrist[,]" (ECF No. 21-8, PageID.463), this issue was

addressed above.  Next, Plaintiff challenges the ALJ's treatment of Plaintiff's care

for his father.  (ECF No. 28, PageID.1044-1046.)  The ALJ mentioned Plaintiff's

care of his father:  (a) at Step 2 with respect to three of the four functional areas

(ECF No. 21-8, PageID.458-459); (b) within the RFC discussion with respect to

the inconsistency of his statements, noting that Plaintiff "testified he was able to

care for his father from 2008 through last year, including managing medical

appointments, medications, and occasionally cooking[,]" (*id*., PageID.461); and,

(c) when assessing the Sollars opinion, noting both that "the claimant has

17

continued to be capable of caring for his father, even managing his care after his
father was moved to a nursing home, per the claimant's testimony[,]" and that
"[t]he claimant testified to frequent calls with his father's care providers,
suggesting an ability to communicate effectively with others[,]" (*id*., PageID.465).
Thus, even if Plaintiff's father was originally in assisted living and then
transitioned to a nursing home, Plaintiff testified at the administrative hearing that
his Dad is in a nursing home (ECF No. 21-8, PageID.500-501), he lives with his
mother (*id*., PageID.503), and – upon questioning by Plaintiff's counsel – that he
did not live with his Dad, who lives or lived in "a senior apartment[,]" (ECF No.
21-8, PageID.517).   Thus, to the extent Plaintiff avers that "even disabled people,
who are unable to work, can help take care of a loved one, *i.e.*, a parent, without
*physically* being their full-time 'aide[,]'" or that "[r]eceiving telephone calls,
taking his dad to a medical appointment, and occasionally having cooked for his
dad are 'somewhat minimal daily functions,' and 'are not comparable to typical
work activities[,]'" (ECF No. 28, PageID.1046 (emphasis added)), ALJ Dodson
does not appear to have used Plaintiff's care of his father in formulating Plaintiff's
physical RFC – *i.e.*, his exertional, postural and environmental limitations.   And, to
the extent Plaintiff contends that the ALJ's treatment of his care for his father
should not have been a basis to discount Dr. Sollars's opinion, Plaintiff has failed
to show that the mental health RFC limitations are insufficient.   Moreover, the

ALJ's opinion reflects awareness that the father was transitioned into a nursing home and legitimately considers what care, coordination or advocacy Plaintiff may have provided in the context of his capabilities and activities. (ECF No. 21-8, PageID.465.)

Plaintiff also takes issue with the ALJ discrediting these opinions as "one time assessments." (ECF No. 28, PageID.1046-1047; *see also* ECF No. 21-2, PageID.83, ECF No. 21-9, PageID.549.) The Court notes Plaintiff's argument that, "[i]f all consulting examinations were given 'little' or 'no weight' because they were only 'on time' evaluations, then State Agency-referred 'one time' evaluations should also be rejected." (ECF No. 28, PageID.1047.) However, as the Commissioner correctly notes, the SSA opinion evidence regulation favors longitudinal treatment relationships. 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("As the ALJ pointed out, Oliver's relationship with Dr. King was extremely limited in nature, stemming from a

single, post-litigation referral, and this brief relationship militates in favor of

granting Dr. King's opinion limited weight[.]").  (ECF No. 32, PageID.1145-1146.)

> **ii.**    **Limitations to unskilled work, involving simple, routine, repetitive tasks; no work with the public, and occasional interaction with coworker and supervisors**

Second, Plaintiff claims that the ALJ "should not have formulated his own

medical opinion[,]" *i.e.*, "should not have formulated his RFC determination

without the aid of opinion evidence."  (ECF No. 28, PageID.1047-1048, 1050.)

Here, it is important to note that – in addition to assigning "little weight" to the

opinions of Drs. Tripi and Sollars – the ALJ mentioned the August 1, 2014 opinion

of state agency psychological consultant, Jerry Csokasy, Ph.D. (ECF No. 21-3,

PageID.133-134, 141-142), albeit not by specific date, as follows:

> State agency consultant, Jerry Csokasy, Ph.D. determined that there
> was insufficient evidence to establish the presence of a mental
> impairment (Exhibit 1A; 2A).  The undersigned gives this opinion
> some weight, as more evidence was available at the hearing level to
> support more than minimal limitations due to mental health
> impairment.

(ECF No. 21-8, PageID.466.)

True, as Plaintiff points out, "courts have stressed the importance of medical

opinions to support a claimant's RFC, and cautioned ALJs against relying on their

own expertise in drawing RFC conclusions from raw medical data."  *Allen v.*

*Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept.

13, 2013), *report and recommendation adopted*, No. 12-15097-DT, 2013 WL

5676251 (E.D. Mich. Oct. 18, 2013).  (ECF No. 28, PageID.1047-1048.)  And,

"there is significant case law in this district confirming the general principle that

the ALJ 'must generally obtain a medical expert opinion' when formulating the

RFC unless the ' 'medical evidence shows relatively little physical impairment'

such that the ALJ can permissibly render a commonsense judgment about

functional capacity[.]'"  *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828

(E.D. Mich. 2017) (quoting *Guido v. Comm'r of Soc. Sec.*, No. 13-cv-13520, 2014

WL 4771929, at *12 (E.D. Mich. Sept. 24, 2014) (quoting *Deskin v. Comm'r of

Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).  However, the RFC need not

be based on a physician's opinion:

> . . . the ALJ is charged with the responsibility of determining the RFC
> based on her evaluation of the medical and non-medical evidence.  As
> the Commissioner points out, the Commissioner has final
> responsibility for deciding an individual's RFC, SSR 96–5p, 1996 WL
> 374183 (July 2, 1996), and to require the ALJ to base her RFC finding
> on a physician's opinion, "would, in effect, confer upon the treating
> source the authority to make the determination or decision about
> whether an individual is under a disability, and thus would be an
> abdication of the Commissioner's statutory responsibility to determine
> whether an individual is disabled."  *Id.*

*Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).  (ECF No. 32,

PageID.1147-1148.)

Not to forget, at Step 3, ALJ Dodson assessed moderate limitations "in

understanding, remembering, or applying information," "in interacting with

21

others," and "with regard to concentrating, persisting, or maintaining pace," but only mild limitation with respect to "adapting or managing oneself." (ECF No. 21-8, PageID.458-459.) Then, between Step 3 and Step 4, the ALJ determined that Plaintiff's RFC included limitations to "unskilled work, involving simple, routine, repetitive tasks[,]" and "no work with the public, and occasional interaction with coworker and supervisors." (ECF No. 21-8, PageID.460.) And he did so, not without reference to professional opinions or after giving no weight to all of the professional opinions; rather, the ALJ considered two opinions to which he gave little weight and one to which he assigned some weight, in the latter instance giving Plaintiff the benefit of *more restrictive* conditions "as more evidence was available at the hearing level to support more than minimal limitations due to mental health impairment." (ECF No. 21-8, PageID.463, 465-466.) In the end, as to Plaintiff's mental health impairments, the ALJ summarized: "the undersigned finds that . . . the claimant's depression and anxiety warrant some mental limitations." (ECF No. 21-8, PageID.466.)

### 3. Cane and bathroom use

Plaintiff's final argument is based on his alleged need to use a cane and alleged need to be close to a bathroom, for both "his unpredictable diarrhea episodes" and "his occasional incontinence." (ECF No. 28, PageID.1050-1052.) Plaintiff supports this argument with references to:

- The 2016 physical MSS of Marshall Sack, D.O., who opined that Plaintiff must use a cane or other hand-held assistive device while engaging in occasional standing/walking due to imbalance and pain (ECF No. 21-13, PageID.782);

- The August 14, 2009 evaluation by Mark D. Garwood, M.D., who noted that Plaintiff "walked with an antalgic gait that did not appear ataxic[,]" (ECF No. 21-7, PageID.330);

- Plaintiff's testimony that his IBS causes "very sudden urges to use the bathroom[,]" he does not "get any warning[,]" he has explosive diarrhea "[u]sually four or five times a day[,]" and he "need[s] to be near a bathroom[,]" (ECF No. 21-8, PageID.487-488); and,

- The VE's testimony regarding conditions that would preclude work (ECF No. 21-8, PageID.526-529).

(ECF No. 28, PageID.1050-1052.)

The ALJ addressed the issue of a cane. At Step 2, when determining that Plaintiff's impairments did not meet or equal Listing 1.04 for disorders of the spine, ALJ Dodson noted that "[a]lthough the claimant testified that he uses a cane, none of his providers prescribed it." (ECF No. 21-8, PageID.458.) Within the RFC determination, apparently referring to Plaintiff's testimony, the ALJ noted that "[t]he claimant stated he used a cane, although none had been prescribed." (ECF No. 21-8, PageID.460.) Finally, within his review of the medical evidence, ALJ Dodson noted, "[a]n examination in April 2009 indicated that the claimant was obese, used a cane, and had strong Hoffmann sign's bilaterally[,]" (*id.*, PageID.461), which is a reference to Dr. Jason A. Brodkey's

23

April 28, 2009 letter (ECF No. 21-7, PageID.334-335).  Plaintiff claims that his

use of a cane is substantiated by Dr. Sack's physical MSS and is further supported

by Dr. Garwood's notes.  (ECF No. 28, PageID.1050-1050.)  Neither of these

citations is evidence of a prescription or direction given by a treater.  *Carreon v.

Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002) ("Because the cane was not a

necessary device for claimant's use, it cannot be considered an exertional limitation

that reduced her ability to work.").

As for the bathroom, the ALJ expressly acknowledged Plaintiff testimony

"to four instances of diarrhea per day and to problems reaching a bathroom in time,

resulting in soiling himself, on multiple occasions."  (ECF No. 21-8, PageID.460.)

Moreover, the ALJ dedicated a paragraph of his RFC determination to Plaintiff's

"gastrointestinal and abdominal problems," within which he noted:  (a) "[i]n May

2015, the claimant was diagnosed with generalized abdominal pain, nausea, and

vomiting, and alternating constipation and diarrhea[,]" (ECF No. 21-8,

PageID.462), which is a reference to Michael Biederman, D.O.'s May 18, 2015

letter (ECF No. 21-7, PageID.397-398); and, (b) Plaintiff "complained of

diarrhea[,]" (*id*., PageID.463), which is a reference to Dr. Sack's August 25, 2016

notes (ECF No. 21-13, PageID.803-805).  However, to the extent Plaintiff relies

upon his testimony as support for his need to be close to a bathroom, the ALJ

concluded that Plaintiff's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this

decision." (ECF No. 21-8, PageID.461.) Plaintiff has not shown error in the

ALJ's application of 20 C.F.R. § 404.1529 and/or SSR 16-3p. And, Plaintiff has

not responded to the Commissioner's characterizations of the medical record, such

as: (a) he only visited a gastroenterologist once, in May 2015 (ECF No. 21-7,

PageID.397-398); (b) he apparently did not follow up with gastroenterologist Dr.

Biederman; and, (c) notwithstanding Dr. Sack's July 2015 or April 2017

recommendations for a colonoscopy (ECF No. 21-7, PageID.425, 931), there is no

colonoscopy in the record. (*See* ECF No. 32, PageID.1134.) Defendant also

points out that Plaintiff "did not report current symptoms of diarrhea to either

Dr. Sack or providers at the Prime[C]are clinic in the two years preceding the

hearing, during which his abdominal examinations were benign[.]" (ECF No.

32, PageID.1134 (citing, generally, ECF No. 21-12, PageID.786-91, 848-66, 894-

928.)) Finally, to the extent Plaintiff's references Dr. Sack's opinion that Plaintiff

was likely to be off task "25% or more[,]" (ECF No. 21-13, PageID.783), and the

VE's testimony that being "off task 25 percent or more of the time" would

preclude the jobs mentioned (ECF No. 21-8, PageID.529) (*see* ECF No. 28,

PageID.1041, 1052), the ALJ was aware of this issue; when assessing CPP at Step

3, the ALJ stated: "Provider Elaine Tripi, PhD, has assessed moderate to extreme

concentration, persistence, and pace limitations, but also noted the claimant would

be off-task more than 25%." (Exhibit 7F; 9F; 12F, p.7). That the ALJ did not

adopt this "off task" assessment is consistent with the discounting of Dr. Tripi's

and/or Dr. Sack's opinions.[6]

### F.   Conclusion

In sum, the ALJ's decision was supported by substantial evidence, and

Plaintiff has not shown legal error which would upend it. Plaintiff has not satisfied

his burden to overturn the ALJ's conclusions at Step 2 or within the RFC

assessment. *Walters,* 127 F.3d at 529. Accordingly, as detailed in the foregoing

discussion, it is **RECOMMENDED** that the Court **DENY** Plaintiff's amended

motion for summary judgment (ECF No. 28), **STRIKE** Defendant's motion for

summary judgment (ECF No. 31), **GRANT** Defendant's amended motion for

summary judgment (ECF No. 32), and **AFFIRM** the Commissioner's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days after being

served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR

72.1(d). Failure to file specific objections constitutes a waiver of any further right

---

[6] The ALJ's reference to Ex. 12F, p. 7 is actually to Dr. Sack's physical MSS, which opines that Plaintiff is likely to be off-task "25% or more[,]" as mentioned above. (ECF No. 21-13, PageID.783.)

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 23, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE